UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JESSICA RICHMAN, et al.,<br><br>Defendants. | Case No. 24-cv-05067-WHO<br><br>**ORDER ON THE MOTION TO DISMISS**<br><br>Re: Dkt. No. 44 |

Evanston Insurance Company ("Evanston") brings this declaratory relief lawsuit against defendants Jessica Richman ("Richman") and Zachary Apte ("Apte") (together, "defendants"), seeking a judicial determination that it owes defendants no duty to defend or indemnify in a number of underlying matters concerning defendants' alleged conduct related to their now-bankrupt company "uBiome." Defendants move to dismiss the case for lack of subject matter jurisdiction.[1] On the facts before me now, defendants appear to have been domiciled in Germany since before the start of this litigation and are therefore "stateless," precluding the diversity jurisdiction upon which Evanston relies to bring its case. I therefore GRANT the motion to dismiss. I will allow leave to amend: Evanston went to a great deal of trouble to serve defendants in Germany and deserves the opportunity to allege adequate additional jurisdictional facts, although it is unclear that it will be able to do so. Evanston shall file any amended complaint within 30 days of this Order.

### BACKGROUND

Evanston is an Illinois-based, domestic surplus lines insurance company. Complaint

---

[1] Defendants also moved to dismiss in the alternative for lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process, but presented no argument to support those reasons for dismissal. I also decline to address them.

("Compl.") ¶ 2.  Apte and Richman are co-founders, officers, and directors of the now-defunct company known as uBiome that purported to be a successful health testing startup.  Compl. ¶¶ 3–4, 26, 30.  Defendants were also Co-Chief Executive Officers of uBiome.  *Id.*  uBiome applied for an insurance policy with Evanston on July 5, 2018.  Compl. ¶ 9.  As a part of the application process, representatives at uBiome certified that no individual was aware that "any wrongful act, event, matter, fact, circumstance, situation or transaction might reasonably be expected to result in or be the basis for a future claim."  *Id.*  Evanston issued the Excess Management Liability Insurance Policy to uBiome effective January 31, 2019–August 21, 2019.  Compl. ¶ 12.

The policy covers a wide range of claims, including written demands for relief, civil, administrative, regulatory, arbitration, or mediation proceedings, official requests for extradition, and criminal proceedings following an indictment.  Compl. ¶ 18.  But it includes the Common Exclusions provision that "the Insurer shall not be liable under this Policy to pay any Loss arising from any Claim made against any Insured [b]ased upon . . . (1) any public offering of securities by the Company, or the solicitation, sale, purchase distribution, or issuance of any such securities . . . (2) any Wrongful Act, relating in any way to any public offering of securities by the Company . . . ."  Compl. ¶22.

Between 2019 and 2022, defendants and uBiome received notice of approximately 11 matters proceeding against them in various courts.  Compl. ¶¶ 23–47.  These included the issuance of a search and seizure warrant, a subpoena to appear and present documents in connection with an ongoing Securities and Exchange Commission ("SEC") investigation, an enforcement action against defendants commenced by the SEC, a criminal proceeding brought by the DOJ, a forfeiture proceeding concerning defendants' properties allegedly bought with fraudulently-acquired income ("*Two Condominiums*"), an adversary proceeding brought by a former trustee of uBiome, a demand for arbitration brought by that same trustee, and an extradition proceeding against Dr. Richman.  *Id.*  The crux of these proceedings are rooted in the allegations that uBiome defrauded its investors to the tune of approximately $60 million when it lied about the successful nature of its use of health insurance reimbursements to turn a profit for the company and likewise sought to defraud medical insurance companies of $300 million for false reimbursements.  Compl.

¶¶ 26, 34.

Defendants, through uBiome, provided Evanston with notice of those proceedings pursuant to the requirements of the insurance policy.  Compl. ¶ 48.  Evanston denied coverage in each matter based on its understanding that by the time uBiome applied for insurance coverage, it was allegedly already committing fraudulent acts that would eventually lead to the matters included above.  Compl. ¶¶ 75–79.  Among other things, Evanston also concluded that the actions leading to the matters occurred prior to the inception date of the policy.  Compl. ¶ 76.

Evanston filed the instant lawsuit on August 12, 2024, seeking declaratory relief that it owed no duty to defend or duty to indemnify defendants in the underlying lawsuits.  *See* Dkt. No. 1.  Since that time, issues of proper service have been raised in this case and the underlying cases.  *See* Dkt. No. 18 (Docket Order by Magistrate Judge Tse explaining: "The plaintiff notes that the defendants appear to be residing in Germany and thus must be served in that country.  Accordingly, the Court hereby vacates the case management conference scheduled for December 13, 2024.  If defendants have not yet appeared by January 31, 2025, the plaintiff is ordered to file an update on service with the Court by February 14, 2025.  If defendants have not appeared and there is no filing from plaintiffs by February 14, 2025, then the Court will dismiss the case without prejudice."); *see also* Order Granting Motion for Alternative Service, *SEC v. Richman*, No. 3:21-cv-01911-CRB (N.D. Cal. July 19, 2021), Dkt. No. 23 at 1 ("Since around July 2020, Defendants have resided in Germany.") and 5 (German Central Authority declined SEC's Hague request).

On November 10, 2025, defendants moved to dismiss the case for lack of diversity subject matter jurisdiction.  *See* Motion to Dismiss ("Mot.") [Dkt. No. 44].  Evanston opposed the motion.  Opposition to the Motion to Dismiss ("Oppo.") [Dkt. No. 46].  Defendants replied.  Reply ISO Motion to Dismiss ("Reply") [Dkt. No. 47].  I held a hearing on the motion on December 10, 2025.

## LEGAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited

3

jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

Diversity jurisdiction exists under 28 U.S.C. § 1332(a), where no plaintiff is a citizen of the same state as any defendant and the amount in controversy exceeds $75,000. A "natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F. 3d 853, 857 (9th Cir. 2001). Complete diversity must exist at the time a complaint is filed, and so domicile is therefore determined at the initiation of a lawsuit. *Lew v. Moss*, 797 F.2d 747, 748 (9th Cir. 1986). A "person is domiciled in a location where he or she has established a fixed habitation or abode in a particular place, and intends to remain there permanently or indefinitely." *Id.* at 749–750 (citation modified). For cases such as this one involving citizens of the United States, "[t]o demonstrate citizenship for diversity purposes, a party must (a) be a citizen of the United States, and (b) be domiciled in a state of the United States." *Id.* at 749.

## DISCUSSION

There is no doubt that defendants currently reside in and currently indicate that they are domiciled in Germany. There is also no dispute that defendants have resided in Germany since 2020. The question is this: At what point did Dr. Richman and Dr. Apte make Germany their domicile as opposed to simply their residence? As the record currently stands, Evanston has been unable to meet its burden to demonstrate that California has been defendants' domicile since before the instigation of this litigation.

Evanston's argument is based on publicly-filed documents related to the underlying actions. In *Two Condominiums*, defendants moved to dismiss the government's complaint and simultaneously moved to strike claims pursuant to the Fugitive Disentitlement Doctrine. Oppo. Exhibit A [Dkt. No. 46-2]. On November 15, 2021, defendants argued in that case that they were *not* fugitives as they were not remaining in Germany to avoid prosecution. *Id.* Instead, defendants

4

explained, they went to Germany in the summer of 2020 for their honeymoon. *Id.* at 8. While there, Dr. Richman's health suffered and Dr. Apte became her primary caretaker. *Id.* Dr. Richman's health continued to deteriorate such that any return to the United States was not yet foreseeable. *Id.* Defendants specifically argued that "Dr. Apte and Dr. Richman are residing in Germany and have not returned due to Dr. Richman's ill health." *Id.* at 19. Further, they attested that "the lack of timeline for recovery is not evidence that Dr. Richman or Dr. Apte remain in Germany for any reason other than her illness." *Id.* at 20. Evanston takes these statements to be proof that although defendants may have been *residing* in Germany at that time, they were still *domiciled* somewhere within the United States. Oppo. 4–6.

Evanston has no evidence of the defendants' domiciliary intent between 2021 and 2024, when it filed this lawsuit.[2] But what is fatal to Evanston's argument is that it has presented no evidence, documentation, or argument to demonstrate proof of defendants' domicile in California. Dr. Richman and Dr. Apte have been living in Germany for the last five years. Four years have passed since defendants made the above-mentioned representations to the court in *Two Condominiums*. Evanston has not made any allegations (in its complaint or in its opposition to the motion) of ongoing ties, or of evidence to suggest that defendants intend to return to California—or anywhere within the United States, for that matter. *See Kanter*, 265 F.3d at 857. Without evidence, or even allegations, of domicile, Evanston's case cannot proceed here.[3]

As the Supreme Court has held: "The problem in this case is that [defendants], although [] United States citizen[s], ha[ve] no domicile in any State. [They are] therefore 'stateless' for purposes of § 1332(a)(3). Subsection 1332(a)(2), which confers jurisdiction in the District Court when a citizen of a State sues aliens only, also could not be satisfied because [defendants are]

---

[2] I do not take notice of the exhibits filed by defendants with the Duffy declaration (Dkt. 44-1), as they were not properly authenticated or translated. I note, however, that they purport to be defendants' German address registration, German drivers' licenses, German health insurance cards, and expired U.S. passports. Should Evanston file an amended complaint, defendants may properly proffer those documents. Any inconsistencies (such as travel after the purported expiration of one passport in 2019) should be explained as a part of any authenticating declaration(s).

[3] It is not as though Evanston lacks the ability to litigate the coverage issue, however. There apparently is a pending lawsuit in Delaware that can adjudicate it. Reply at 9.

5

United States citizen[s]." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989).  I do not have jurisdiction over defendants in this matter.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED with leave to amend. Evanston shall file any amended complaint within 30 days of this Order.

**IT IS SO ORDERED.**

Dated: December 11, 2025



William H. Orrick
United States District Judge